ORIGINAL

FILED
CLERK, US DISTRICT COURT

AUG 12 2003

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

ENTERED
CLERK, U.S. DISTRICT COURT

AUG 14 2003

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Priority ✓
Send ✓
Enter ✓
Closed ___
JS-5/JS-6 NO
JS-2/JS-3 ___
Scan Only ___

CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Nancy Jacobs, et al.,

    Plaintiffs,

v.

Herbalife International, Inc., et al.,

    Defendants.

NO. CV 02-01431 SJO (RCx)

**ORDER RE DEFENDANTS' MOTION TO DISMISS**

The Court is in receipt of Defendants' motion to dismiss pursuant to the Private Securities Litigation Reform Act of 1995 and Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument. Having considered the arguments raised in the briefs, the Court GRANTS Defendants' motion in part and DENIES it in part. Specifically, (1) Defendants Herbalife International, Inc. and Herbalife International America, Inc.'s motion to dismiss is DENIED; (2) however, Counts 1, 2, and 4 against each individual defendant are GRANTED for the reasons discussed below.

## FACTUAL BACKGROUND

Plaintiffs Nancy Jacobs and Annette Sanchez, suing on behalf of themselves and others similarly situated, have brought this action against Defendants Herbalife International, Inc.; Herbalife International of America, Inc. (collectively, "Herbalife"); Dream Builders & Associates International, Inc. ("Dream Builders"); H.B. International Group, Inc., Anthony Powell; Doran Andry; Craig M. Tsutakawa; Caroline Tsutakawa; Tarun Juneja; John Beall; Brett Bartholomew; Leah Graham; Stephen Combs; and Debra Combs (collectively, the "Individual Defendants").[1] Plaintiffs claim that Defendants are marketing Herbalife products through an illegal pyramid scheme known as "The Newest Way to Wealth" ("NWTW") and have brought this action alleging violations of federal securities and various state laws.

Judge Harry L. Hupp granted Defendants' motions to dismiss the original complaint on two bases: (1) Jacobs failed to allege the predicate acts of wire and mail fraud with FRCP 9 specificity, and (2) Herbalife and the Combs are not adequately alleged as persons operating within the racketeering enterprise. Judge Hupp dismissed the complaint with leave to amend.

Subsequently, Plaintiffs filed the first amended complaint ("FAC") alleging violations of RICO and various state law. However, this Court granted Defendants' motions to dismiss Plaintiffs' RICO claims with prejudice because these claims are preempted by federal securities laws. This Court dismissed the complaint with leave to amend the complaint to allege a violation of federal securities law. See Order dated April 16, 2003.

The newly pleaded securities claims are set forth in Counts 1 through 5 of the SAC. **Count 1** alleges that Defendants failed to register either the Herbalife or the Herbalife/NWTW Securities, and are therefore liable for rescission and damages under Section 12(a)(1) (formerly Section 12(1)) of the Securities Act of 1993 ("the Securities Act"), 15 U.S.C. § 77l(a)(1). **Count 2** alleges that Defendants sold the Herbalife/NWTW securities in a public offering by means of a

---

[1] Motion to dismiss have been filed by Herbalife International, Inc. and Herbalife International of America, Inc.; Leah Singleton; and Brett Bartholomew. Joinders in the above motions to dismiss have been filed by several of the Defendants, including Dream Builders & Associates International, Inc., Anthony Powell, and Tarun Juneja; H.B. International Group, Inc. and Doran Andry; Stephen and Debra Combs; John Beall; Craig and Caroline Tsutakawa; Leah Singleton; and Brett Bartholomew.

fraudulent "prospectus" (i.e., the NWTW promotional materials) in violation of Section 12(a)(2) (formerly Section 12(2)) of the Securities Act, 15 U.S.C. § 77l(a)(2). **Count 3** alleges controlling person liability against Herbalife arising from the Section 12(a)(2) violations by the NWTW Defendants, pursuant to Section 15 of the Securities Act, 15 U.S.C. § 77o. **Count 4** alleges that all of the Defendants engaged in a scheme to defraud in the sale of both the Herbalife and the Herbalife/NWTW Securities, in violation of Section 10(b) of the Securities and Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78b, and Rule 10b-5 promulgated thereunder by the SEC. **Count 5** alleges controlling person liability against Herbalife arising from the Section 10(b) and Rule 10b-5 violations of the NWTW Defendants in the sale of the Herbalife/NWTW securities.[2] The SAC also alleges the followings: Fraud and Deceit (Count 6); violation of Cal. Penal Code § 327 (Count 7); violation of Cal. Seller Assisted Marketing Plans Laws (Count 8); and unlawful, unfair or deceptive business practices in violation of Cal. Bus. & Prof. Code § 17200 et seq. (Count 9).

In summary, Plaintiffs plead the following facts. Defendant Herbalife is a multi-level marketing organization that develops and distributes dietary supplements. Plaintiffs Jacobs and Sanchez were independent Herbalife distributors. The NWTW plan, developed and operated by some of the individually named Defendants, is the largest "Lead Generations System" ("LGS") in Herbalife's marketing system. SAC at ¶ 90.[3] Relying on the fraudulent misrepresentations and omissions in the NWTW promotional materials, see Id. ¶¶ 67-87, and in the hope of earning "incredible incomes," see id. ¶¶ 40-41, 78, Plaintiffs were induced to apply for and become Herbalife distributors, NWTW focus group members, and eventually, Herbalife supervisors. See ¶ 103-113. Plaintiffs purchased significant quantities of Herbalife products and NWTW promotional materials, which they received by mail. See id. Several months of exhaustive work conducted in accordance with the training materials Plaintiffs obtained from the NWTW System,

---

[2] A chart summarizing plaintiffs' federal securities claims is attached to Plaintiffs' Opposition as Exhibit A.

[3] The term "LGS" is used within Herbalife to refer to distributor-developed promotional systems, the use of mass mailings, telephone solicitations, sign-posting, sales scripts, and other techniques designed to increase recruitment of new distributors. FAC at ¶ 55.

3

Dream Builders, Herbalife and other Defendants, Plaintiffs found themselves bankrupt and without income, contrary to what the NWTW promotional materials promised. According to Plaintiffs, investment in the Herbalife Plan, including the purchase of Herbalife products and sales aids, constitute investment contract securities under both the Securities Act and the Exchange Act ("Herbalife Securities"). Id. ¶ 114. Furthermore, Plaintiffs also allege that Investment in the combination of the Herbalife Plan and the NWTW Lead Generation System, including the purchases of NWTW promotional materials and Herbalife products, constitute investment contract securities for purposes of both the Securities Act and the Exchange Act ("Herbalife/NWTW Securities"). Id. ¶ 116. Defendants now move to dismiss the SAC.

## LEGAL STANDARD

The legal standard governing 12(b)(6) motion is strict. A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988). A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. The court must accept all material allegations in the complaint as true and construe them in the light most favorable to the plaintiff. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986); see also, Russell v. Landrieu, 621 F.2d 1037, 1039 (9th Cir. 1980).

"[D]ismissal is warranted only if it appears to a certainty that [plaintiff] would be entitled to no relief under any state of facts that could be proved." NL Indus., 792 F.2d at 898. However, a court need not accept as true unreasonable inferences or conclusory legal allegations. Western Min. Council v. Watt, 643 F.2d 618, 624 (9th Cir.), cert. denied, 454 U.S. 1031 (1981).

## DISCUSSION

Defendants argue that Plaintiffs' Security and Exchange Act claims fails for four reasons: (1) the Security Act and the Exchange Act claims are not alleged with sufficient particularity to survive a motion to dismiss, (2) Plaintiffs fail to plead the sale of securities, (3) Plaintiffs fail to

1 | plead a prospectus, and (4) Plaintiffs fail to plead "control person" liability by Herbalife. Def.
2 | Herbalife's mot. to dismiss at 4, 19, 21.

### I. THE SAC SUFFICIENTLY PLEAD THE EXISTENCE OF SECURITY

Defendants argue that Plaintiffs fail to plead the sale of securities. P. & A. at 19. Defendants argue that since under Plaintiffs' security theory, investments in a pyramid scheme are "investment contracts," Plaintiffs' failure to allege that Herbalife operated a pyramid scheme, an indispensable element for pleading the existence of "securities," is fatal to Plaintiffs' claims. According to Defendants, Plaintiffs failed to plead a pyramid scheme because Plaintiffs failed to plead insufficient retail sales to bona fide customers on Defendants' part. Defs' mot. at sec. I.A.2.

However, Plaintiffs sufficiently plead the sale of securities here to survive a motion to dismiss. Defendants argue that Plaintiffs' pyramid scheme argument fails because they did not allege lack of retail sales. Mot. at 10. Furthermore, Defendants cited State ex rel. Miller v. American Prof'l Mktg., Inc. in support of their claims. Reply at 6. However, in State ex rel. Miller, the Iowa Supreme Court found that each case should be examined upon its own merits. State ex rel. Miller v. American Prof'l Mktg., Inc., 382 N.W.2d 117, 123 (Iowa 1986). The court found that

> a marketing program may show that its primary feature is the recruitment of salespersons unrelated to selling the product. Those plans may indeed be illegal as a matter of law. In other instances, however, evidence must be presented that the primary effect of the marketing program is the recruitment of persons that is unrelated to retailing the product before the plan can be deemed an unlawful practice.

Id.

Here, Plaintiffs plead with sufficient facts that Herbalife operated as a pyramid scheme. SAC ¶ 38-49. For example, Plaintiffs alleged that the:

> potential payout for distributors who sponsor large downline organizations far exceeds the 'retail profits' a distributor could feasibly earn by simply retailing Herbalife products. Accordingly, the Herbalife Plan incentivizes distributors to spend most of their time and energy in the recruitment of new distributors as opposed to the retail sale of Herbalife products to consumers, with the result that the Herbalife Plan constitutes a pyramid scheme.

Id. ¶ 44.

The Federal Trade Commission has defined pyramid scheme as

characterized by the payment by participants of money to the company in return for which they receive (1) the right to sell a product *and* (2) the right to receive in return for recruiting other participants into the program rewards which are unrelated to sale of the product to ultimate users.

In re Koscot Interplanetary, Inc., 1975 WL 173318 (F.T.C), 86 F.T.C 1106 (1975), aff'd mem. sub nom., Turner v. F.T.C., 580 F.2d 701 (D.C.Cir. 1978). Here, Plaintiffs alleged that participants must purchase a "distributor kit" to received the right to sell Herbalife product. SAC ¶ 38. Furthermore, the SAC alleged that a distributor must purchase 4,000 volume points in one month or 2,500 volume points in two consecutive months in order to qualify as a "Supervisor" and earn royalties and bonuses from recruiting other distributors. Id. Therefore, Plaintiffs have alleged both elements of the Federal Trade Commission's pyramid scheme definition.

Plaintiffs also allege that Herbalife failed to enforce its Retail Sales Rules[4] so as to ensure that the majority of its products are actually retailed to bona fide consumers. Id. ¶ 45. In addition, Plaintiffs allege that NWTW promotional materials encourages Herbalife distributors to spend 80% of their time in recruiting and only 20% in retailing. Id. ¶ 89. The Ninth Circuit has held that, pyramid schemes are investment contracts within the meaning of the federal securities laws. See Webster v. Omnitron Int'l, Inc., 79 F.3d 776, 784 (9th Cir. 1996) (establishing that investments in a pyramid scheme were "investment contracts" and thus securities within the meaning of the federal securities laws) (citing S.E.C. Glenn W. Turner Enters., Inc., 474 F.2d 476 (9th Cir. 1973) cert. denied, 414 U.S. 821 (1973)). In Webster, the court defines an investment contract as a transaction in which "the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." 79 F.3d at 784. The Ninth Circuit has rejected a strict interpretation of the "solely from the efforts of others" requirement, in favor of a flexible approach that focuses on "whether the efforts made by those other than the investor are the undeniably significant ones." Id. Furthermore, the Court in Webster explains that, "[b]y the very structure of a pyramid scheme, participants' efforts are focused not on selling products but on

---

[4] The Retail Sales Rules require distributors to certify that they have sold at least 70% of their prior product purchases before making a new order and that they have made retail sales to at least ten customers per month. SAC ¶ 45.

recruiting others to join the scheme. Under the reasoning of <u>Glenn W. Turner</u>, this is enough to bring investments in the program within the definition of 'investment contracts.'" <u>Id.</u>

As a result, Plaintiffs did plead sufficient facts for Herbalife's marketing plan to constitute as the offering of securities.

## II. THE SAC SUFFICIENTLY ALLEGES A "PROSPECTUS" FOR PURPOSE OF COUNT 2.

Defendants argue that Plaintiffs fail to plead the existence of a "prospectus," an element of Plaintiffs' Count 2 claim. 15 U.S.C § 77l(a)(2). First, Defendants argue that Plaintiff is wrong in arguing that NWTW materials serve as prospectuses. Defs' mot. at n.6, 20. The United States Supreme Court held that "Prospectus" as used in Section 12(a)(2) only "relates to public offerings by issuers and their controlling shareholders." <u>Gustafson v. Alloyd Co.</u>, 513 U.S. 561, 576 (1995). Defendants argue that Plaintiffs did not allege any public offerings, but that the purported securities investments were "offered privately to lower-level Herbalife distributors, and not to the general public." P. & A. at 20.

However, Plaintiffs did allege enough facts to assert that the NWTW promotional material by the Defendants was a public offering. SAC ¶ 130. Since Defendants did not cite any case to support its claim that the NWTW promotional materials do not constitute prospectuses, this Court should take Plaintiffs' allegation as true under the notice pleading requirement of Fed. R. Civ. P. 12(b)(6). The Tenth Circuit has held that to determine whether an offering is public or private, courts should look at (1) the number of offerees; (2) the sophistication of the offerees, and (3) the manner of the offering. <u>U.S. v. Arutunoff</u>, 1 F.3d 1112, 1118 (10th Cir.), <u>cert. den.</u>, 114 S.Ct. 616 (1993). Here, Plaintiffs allege that Defendants disseminated tens of thousands of copies of the NWTW promotional materials nationwide. SAC ¶ 130. Tens of thousands is a substantial number which suggests it was a public offering. Plaintiffs also allege that the NWTW promotional materials targeted unsophisticated investors. Furthermore, the SAC stated that "the manner of distribution included widespread sign posting, mass mailings, and e-mailings, automated telephone calls, and hundreds of Internet web sites." SAC at ¶ 130. Looking at the totality of

7

circumstances, Plaintiffs did allege that NWTW promotional materials were offered to the public.

Defendants also argue that Plaintiffs' allegation that the NWTW promotional materials constitute prospectuses is invalid. Defendants claim that Plaintiffs cannot allege that the NWTW Promotional materials serve as both prospectus and securities themselves. Reply at 20. In support of its argument, Defendants cited Gustafson v. Alloyd Co., Inc., where the United States Supreme Court defined prospectus as "a document that describes a public offering of securities by an issuer or controlling shareholder." Gustafson v. Alloyd Co., Inc., 513 U.S. 561, 584 (1995). However, the court in Gustafson did not suggest that a prospectus cannot be a security in itself. Id. The court merely held that a private contract of sale, not held out to the public, is not a prospectus. Id. Here, as discussed above, the SAC suggests that the NWTW Promotional materials were held out to the public to serve as prospectuses.

Defendants further argue that Plaintiffs did not allege that the NWTW promotional materials were disseminated by Herbalife, so Plaintiffs cannot hold Defendants liable under Section 12(a)(2) of the Securities Act. However, Plaintiffs alleged that "[i]t was part of the NWTW scheme to cause distributors to disseminate uniform and standardized promotional materials which fraudulently projected the successful expansion and operation of the Herbalife businesses of NWTW members." SAC at ¶ 71. Here, this allegation is referring to both NWTW and Herbalife distributors, who retail Herbalife products. Those distributors are acting as agents for Herbalife in the distribution of the NWTW promotional materials in an attempt to recruit new supervisors for Herbalife. Furthermore, Plaintiffs allege that the NWTW promotional materials were disseminated by Defendants, which include Herbalife. SAC at ¶ 130. Accordingly, Plaintiffs did allege that Herbalife disseminated the NWTW promotional materials.

Further, Defendants also argue that the "SAC alleges that Herbalife offered the purported 'securities' to its distributors, who have pre-existing relationships with Herbalife, rather than to the public at large" by citing ¶ 114 in the Complaint. Reply at 21. However, Defendants' claim is not necessarily true. Paragraph 114 of the SAC suggested that the investment securities were for the level of supervisor or higher. SAC ¶ 114. However, this does not suggest that only current

8

distributors can qualify as supervisors. A new investor can purchase the $4,000 worth of Herbalife products up-front and immediately qualify as a supervisor. Moreover, Plaintiff alleged that Defendants disseminated the promotional materials through sign posting, mass mailings and e-mailings, automated telephone calls, and hundreds of Internet web sites. SAC ¶ 130. The internet web sites can be seen by anyone. Therefore, the purported securities is not only offered to distributors with pre-existing relationships with Herbalife, but to the public at large.

### III. PLAINTIFFS COMPLY WITH THE STRINGENT PLEADING STANDARDS OF THE PSLRA FOR COUNT 4. THE PSLRA DOES NOT APPLY TO COUNTS 1-3, BUT RULE 9(B) APPLIES TO COUNTS 2-3.

Congress raised the pleading standards for private securities fraud claims by enacting the Private Securities Litigation Reform Act of 1995 (the PSLRA). In re Silicon Graphics Sec Litig., 183 F.3d 970, 973 (9th Cir. 1999) (en banc). Under the PSLRA, Plaintiffs must plead the elements of a private securities suit with particularities that gave rise to the action. 15 U.S.C § 78u-4(b). If a plaintiff alleges that the defendant made a misrepresentation or omission of material fact, the complaint must

> specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

15 U.S.C § 78u-4(b)(1). Furthermore, the complaint shall,

> with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C § 78u-4(b)(2). If any element of a claim for securities fraud has not been pled properly, "the [C]ourt shall, on the motion of any defendant, dismiss the complaint." 15 U.S.C § 78u-4(b)(3)(A).

### A. The PSLRA does not cover Counts 1-3 of the Securities Act, but Rule 9(b) does cover Counts 2-3. Plaintiffs satisfy the Rule 9(b)'s requirements.

Defendants argue that Plaintiffs did not plead the securities claims with sufficient particularities to survive a motion to dismiss under the stringent pleading requirements of the PSLRA. Def. Herbalife's mot. to dismiss at 4. However, the PSLRA does not cover Plaintiffs'

claims based on the Securities Act, i.e. Counts 1-3. See In re Initial Public Offering Securities Litigation, 241 F.Supp.2d 281, 338 (S.D.N.Y 2003) ("the PSLRA pleading requirements have no application to claims that arise under Section 11 or other provisions of the Securities Act (e.g., Section 15)"). The Southern District of New York found that in enacting the PSLRA, "Congress repeatedly treated the Securities Act and the Exchange Act as separate chapters." Id. at 337; see also 15 U.S.C. §§ 77z-1, 78u-4 (identical provisions concerning certain matters). If the "Court were to interpret 'under this chapter' as used throughout 15 U.S.C. § 78u-4 to include the Securities Act, each of [the] identical provisions in the Securities Act would be entirely superfluous." In re Initial Public Offering Securities Litigation, 241 F.Supp.2d at 337; see Untied States v. Nordic Vill., Inc., 503 U.S. 30, 36 (1992) ("a statute must, if possible, be construed in such fashion that every word has some operative effect."). Counts 1-3 claims are based on the violation of the Securities Act. Therefore, they are not subject to the pleading requirements of the PSLRA.

Nevertheless, the Ninth Circuit has held that Securities Act claims that "sound in fraud" must comply with Rule 9(b). See In re Stac Electronics Sec. Litig., 89 F.3d 1399, 1405 n.3 (9th Cir. 1996); Falkowski v. Imation Corp., 309 F.3d 1123 (9th Cir. 2003). Here, Counts 2 and 3[5] sound in fraud because Plaintiffs alleged that Defendants distributed fraudulent NWTW promotional materials, which constituted prospectuses, that were materially false and misleading. See SAC ¶¶ 67-87, 128-135. Therefore, Plaintiffs' 12(a)(2) (count 2) claim is subject to Rule 9(b)'s requirement.

Rule 9(b) of the Federal Rules of Civil Procedure requires that "the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). Here, Plaintiffs pleaded specific details with respect to the NWTW scheme, the misleading and fraudulent NWTW promotional materials, and why they were misleading. See SAC ¶¶ 67-87. For example, Plaintiffs allege that the "NWTW promotional materials [made] numerous

---

[5] See discussion for Count 3 under Control Person liability in section IV.

representations concerning the 'incredible' incomes which participants can achieve" if they buy in at the "Supervisor" level, but it does not disclose that the investment in "the Herbalife Plan and the NWTW System are exceedingly risky" because the Herbalife Plan is a pyramid scheme. SAC ¶ 78, 83a. Plaintiff followed that with the specific representations that were made by the NWTW promotional materials in the SAC. Id. ¶ 78a-g. For example, the materials claim that "Herbalife has over 500 people on its prestigious President's Team who are earning between $200,000 per year and $500,000 per year!" Id. ¶ 78a. Furthermore, Plaintiffs pleaded that Defendants "knew and intended" for participants to rely on the promotional materials and earnings testimonial, without disclosing to them that most people failed in the Herbalife plan. Id. ¶ 85. Therefore, Plaintiffs did plead their Count 2 claim with particularities to satisfy Rule 9(b). SAC ¶ 67-87, 126-135.

### B. Plaintiffs satisfy the stringent pleading standards of the PSLRA for Count 4.

Defendants also argue that Plaintiffs' Count 4 claim under section 10(b) of the 1934 Exchange Act fails because Plaintiffs did not plead sufficient facts to satisfy the stringent requirement of the PSLRA. 15 U.S.C § 78u-4(b)(1).

#### 1. For Count 4, Plaintiffs are required to plead misrepresentation with particularity because they relied on misrepresentation and omission. Nevertheless, Plaintiffs met that requirement.

Defendants argue that Plaintiffs fail to plead misrepresentations by Herbalife with the particularity required by the PSLRA pursuant to 15 U.S.C. § 78u-4(b)(1). P. & A. at 5. On the other hand, Plaintiffs argue that its security fraud claim meets the PSLRA's particularity requirement because their fraud claims were adequately pleaded for purposes of Rule 9(b) under the RICO claim. Opp'n at 13. Plaintiffs' argument is flawed in that the PSLRA's requirement is more stringent than Rule 9(b). Rule 9(b) provides that "the circumstances constituting fraud or mistakes shall be stated with particularity." Fed. R. Civ. P. 9 (b). In contrast, the PSLRA provides that a securities fraud complaint shall (1) identify each statement alleged to have been misleading, (2) specify the reason or reasons why the statement is misleading, and (3) if an allegation regarding the statement or omission is made on information and belief, plead all facts on which that belief is formed with particularities. 15 U.S.C. § 78u-4(b)(1). Because the PSLRA's standard

is more stringent than Rule 9(b)'s standard, Plaintiffs cannot argue that their securities fraud claims is sufficient merely because they have already survived the Rule 9(b) attack.

Plaintiffs further argue that 15 U.S.C. § 78u-4(b)(1) does not cover their Count 4 claim under Section 10(b) of the Exchange Act because the core of Plaintiffs' allegation is that defendants are operating an illegal pyramid scheme. Opp'n at 17. Under Section 10(b) of the Exchange Act, besides misrepresentations or omissions of material fact, it is unlawful "to employ any device, scheme, or artifice to defraud . . . in connection with the purchase of sale of any security." 17 C.F.R. § 240.10b-5. Plaintiffs cited In re Initial Public Offering Sec. Litig., 241 F.Supp. 2d 281, 334 (S.D.N.Y 2003), which found that "[w]hile claims brought under Rule 10b-5(b) must always satisfy paragraph [15 U.S.C. § 78u-4](b)(1)'s statutory requirement, claims brought under Rule 10b-5(a) or 10b-5(c) need not if they do not rely upon misstatements or omissions (e.g., if they allege market manipulation)[,]" in supporting its argument.

Plaintiffs' argument is flawed in that its Count 4 claim relies on misstatements and omissions. See SAC ¶¶ 140-141. For example, Plaintiffs alleged that Defendants "made materially false statements, and failed to disclose the material facts necessary to make the statements made not misleading." Id. at ¶ 141. Accordingly, (b)(1)'s statutory requirements apply to Count 4.

Under the PSLRA, the SAC shall identify: (1) each statement alleged to have been misleading; (2) the reason or reasons why the statement is misleading; and (3) all facts on which that belief is formed. 15 U.S.C. § 78u-4(b)(1). With respect to the first element, Plaintiffs identify each statement alleged to have been misleading. Id. at ¶¶ 40a-j, 41, 71, 78a-g. Defendants argue that Plaintiffs fail to allege when the statement was made, where it was made, who made the statement, and in what context the statement was made. P. & A. at 7. Nonetheless, the SAC satisfies Defendants' proposed factors by alleging that the testimonials statement were from Herbalife's Internet web site at **www.herbalife.com.** SAC ¶ 40.

Defendants also argue that their statements are not misleading because "statements regarding past events contain no implicit prediction that those events or conditions will continue in the future." P. & A. 8, citing In re Splash Tech. Holdings Sec. Litig., 160 F. Supp. 2d 1059, 1078 (N.D.

Cal. 2001). However, Plaintiffs claim that the NWTW promotional materials make fraudulent projections that distributors would make a substantial amount of money. SAC ¶¶ 74, 79.

Further, Defendants also argue that Plaintiffs should be barred from bringing this action because Herbalife provided a disclaimer with respect to the testimonials. The discussion states, "[t]he income testimonials presented are applicable to the individuals depicted and are not a guarantee or you income nor are they typical." P. & A. 8-9; SAC ¶ 42. However, SAC claims that the disclaimer was in small print; therefore, whether the disclaimer was adequate is a question of fact for the jury. SAC ¶ 42.

In regard to the second element, the SAC sufficiently stated the reasons why the statements are misleading. Id. ¶ 82, 83. The SAC asserts that "[t]he investments of money and time in the Herbalife Plan and the NWTW System are exceedingly risky because the Herbalife Plan, including the NWTW System as emoployed in connection with the Herbalife Plan, constitute a pyramid sale scheme, that such schemes inevitably collapse after a period of explosive growth, and most people in pyramid schemes lose money." Id. ¶ 82a.

Defendants further argue that Plaintiffs also fail to plead information and belief with the particularities as required by the PSLRA. P. & A. 15. However, "[a]llegations are deemed to have been made on information and belief until the plaintiffs demonstrate that they have personal knowledge of the facts." In re Vantive Corp. Sec. Litig., 283 F.3d 1079, 1085 n.3. (9th Cir. 2002). Here, Plaintiffs did demonstrate personal knowledge. Plaintiffs themselves were Herbalife distributors and were active with the NWTW System. See SAC ¶ 103-113. Plaintiffs experienced the failure as participants. Id. ¶ 105-106, 110-111. In addition, Plaintiffs allege that NWTW promotional materials encourages Herbalife distributors to spend 80% of their time in recruiting and only 20% in retailing. Id. ¶ 89. Therefore, Plaintiff had personal knowledge of the facts alleged in the complaint.

As discuss above, Plaintiffs satisfied the pleading with particularity requirement in regard to misrepresentation.

13

## 2. Plaintiffs Pleaded Scienter with particularity.

Defendants argue that Plaintiffs fail to satisfy the PSLRA's stringent requirement for pleading scienter. Mot. at 11. Under the PSLRA, Plaintiffs are required to plead "particularized facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). The Ninth Circuit held that "particular facts giving rise to a strong inference of deliberate recklessness, at a minimum, is required to satisfy the heightened pleading standard under the PSLRA." In re Silicon Graphics Inc. Securities Litigation, 183 F.3d 970, 974 (9th Cir. 1999). In Lipton v. Pathogenesis Corp., the Court found that it must consider "whether the total of plaintiffs' allegation, even though individually lacking, are sufficient to create a strong inference that defendants acted with deliberate or conscious recklessness." 284 F.3d 1027, 1038 (9th Cir. 2002). Furthermore, Plaintiffs' allegations should be coupled with particularized facts and corroborative details. Silicon Graphics, 183 F.3d at 985.

Defendants argue that Plaintiffs' allegation regarding Herbalife's state of mind in implementing a lead generation system initiative is irrelevant for purposes of pleading scienter because the scienter requirement concerns defendants' alleged state of mind in committing misrepresentation or ommissions of material facts, and not with defendants' state of mind with respect to other things. P. & A. at 13. Defendants cited Binder v. Gillespie, 184 F.3d 1059 (9th Cir. 1999), in support of its argument by claiming that it explains that a Section 10(b) claim requires an allegation of misrepresentation or omission of material fact made with scienter. P. & A. 13. However, Binder merely lists the elements of a 10(b) claim without discussing the application of the scienter requirement. Binder, 184 F.3d at 1063.

Looking at the SAC, Plaintiffs allege specific facts concerning Herbalife's motive and purpose in developing Lead Generation Systems, including NWTW. SAC ¶¶ 51-57. Plaintiffs claimed that Herbalife "tacitly directed and encouraged" senior distributors "to use deceptive and coercive techniques to recruit new distributors." Id. at ¶ 58. Also, Plaintiffs pleaded that Defendants "knew and intended" for participants to rely on the promotional materials and earnings testimonial, without disclosing to them that most people failed in the Herbalife plan. Id. ¶ 85.
14

Furthermore, Plaintiffs stated with specificity the content of a memo from Frank Tirelli, Herbalife's CEO, to certain senior distributors in regard to the risks of "adverse impact of regulatory scrutiny" and "exposure to civil lawsuits." Id. ¶ 61. Accordingly, Plaintiffs sufficiently alleged that Herbalife was aware that it was using deceptive LGS promotional materials and that Herbalife was a pyramid scheme. Id. Further, the SAC alleges Herbalife's approval of the NWTW and the NWTW promotional materials with corroborating facts. Id. ¶¶ 88-102. Specifically, Plaintiffs alleged that Herbalife conceived of and adopted LGS as a crucial part of its business. Id. ¶ 88. Overall, the SAC supports a strong inference of Defendants' deliberate recklessness and that Defendants had knowledge that Herbalife was operating a pyramid scheme. The SAC sufficiently pleaded scienter.

### 3. Plaintiffs sufficiently pleaded reliance with particularity.

Defendants claim that Plaintiffs fail to plead reliance with particularity. P. & A. at 17. Defendants argue that because Plaintiff Nancy Jacobs alleged that she relied on the fraudulent misrepresentations and omissions in the NWTW promotional materials and not Herbalife, her reliance should fail as a matter of law. Id. at 17-18.

However, Plaintiffs allege that the NWTW system was developed and implemented exclusively for the promotion of Herbalife. SAC ¶ 67. Plaintiffs further alleged that "[m]any of the representations in the NWTW promotional materials were attributable to statements made and approved by Herbalife and its founder, Mark Hughes." Id. ¶ 89. Therefore, the NWTW system's alleged deception can be attributed to Herbalife. Consequently, Plaintiffs sufficiently alleged reliance on Herbalife's misrepresentation and omission.

## IV. PLAINTIFF SUFFICIENTLY PLEADED "CONTROL PERSON" LIABILITY FOR COUNTS 3 AND 5.

Plaintiffs' Count 3 claim is based on 15 U.S.C. § 77o. Under 15 U.S.C. § 77o, anyone who controls any person liable under 15 U.S.C. § 77l through ownership "shall also be liable jointly and severally," unless the controlling person had no knowledge of the controlled person's violation. 15 U.S.C. § 77o. Plaintiffs allege controlling person liability against Herbalife arising from Count 2 violation by the NWTW Defendants. In Count 5, Plaintiffs allege controlling person liability

against Herbalife arising from Count 4 violation of the NWTW Defendants in the sale of Herbalife/NWTW securities. Defendant Herbalife argue that Plaintiffs fail to plead "control person" liability by Herbalife. P. & A. at 21.

According to the Ninth Circuit, to establish "control person" liability, Plaintiffs must show (1) a primary violation of the federal securities laws and (2) that the defendant "directly or indirectly" controlled the violator. Paracor Finance, Inc. v. General Electric. Capital Corp., 96 F.3d 1151, 1161 (9th Cir. 1996). Here, Defendants argue that Plaintiffs fail to allege a primary violation of federal securities law for the reasons set forth in the motions to dismiss filed by the individual defendants. P. & A. at 21. However, Plaintiffs met the requirements of alleging a primary violation of federal securities law as discussed above. See Seciton B.

Defendants further argue that Plaintiffs fail to allege that Defendant directly or indirectly controlled the violator, the NWTW System. Id. In alleging control person liability, Plaintiffs must allege that "defendants exercised 'a significant degree of day-to-day operational control, amounting to the power to dictate another party's conduct or operations.'" In re Mckesson HBOC, Inc. Sec. Litig., 126 F.Supp. 2d 1248, 1277 (N.D. Cal 2000). Here, Plaintiffs allege that the Herbalife Defendants have control and influence over each of the Individual Defendants, who developed and controlled the NWTW system, pursuant to their Herbalife distributor agreements. SAC ¶ 137. Furthermore, Herbalife and the Individual Defendants jointly manage the Herbalife network marketing system. Id. Therefore, "Herbalife actively exercised its control over the business and affairs of the NWTW Defendants." Id. Since Plaintiffs allege that Herbalife controls the NWTW Defendants, who control the NWTW System, the Court may infer that Herbalife also control the NWTW system. Therefore, Plaintiffs did allege that Defendant Herbalife exercise a significant degree of control over the NWTW system.

**V. THE CLAIMS AGAINST DEFENDANTS SINGLETON AND BARTHOLOMEW SHOULD BE DISMISSED.**

Defendants argue that Plaintiffs' Section 12(1) and 12(2) claim against Defendants Singleton and Bartholomew must fail because Plaintiffs did not allege that either Singleton or Bartholomew "offer or sold" securities to Plaintiffs as require by Sections 12(1) and 12(2). See

15 U.S.C. § 77l. An essential element of pleading liability under Count 1 and 2 is the allegation that the "defendant sold the securities to the plaintiff." Wolf v. Banco Nacional De Mexico, 549 F.Supp. 841, 853 (N.D. Cal. 1982), rev'd on other grounds, 739 F.2d 1458 (9th Cir. 1984), cert. den., 469 U.S. 1108 (1985). Plaintiffs merely allege that the two Defendants (1) were involved in the conception, formation and/or operation of the NWTW System, and drafted fraudulent NWTW promotional material, among other related activities. SAC ¶ 26-27. Plantiffs then concludes that Singleton and Bartholomew were sellers of the securities. However, there is no direct privity between the two defendants and Plaintiffs in the buying of the Herbalife security or the Herbalife/NWTW security. As a result, Defendants Singleton and Bartholomew did not sell or offer to sell the Herbalife security or Herbalife/NWTW security. Therefore, Plaintiffs' claim must fail.

Plaintiffs' Count 4 claim also fails because Plaintiffs did not allege Defendants Singleton and Bartholomew's violation with particularity as required by the PSLRA.[6] For example, Plaintiffs allege that Defendants were actively involved in the conception, formation, and/or operation of the NWTW System. Id. However, Plaintiffs did not state Defendants' specific roles in relation to the NWTW System's operation. Furthermore, Plaintiffs also claim that Defendants drafted and adopted the fraudulent NWTW promotional materials. Id. Nevertheless, Plaintiffs did not specify which promotional materials and did not identify which of Defendants' statement was a misrepresentation. See 15 U.S.C § 78u-4(b)(1).

Additionally, since Plaintiffs did not claim to have personal knowledge of the individual defendants' wrongdoings, Plaintiffs must plead information and belief with the particularities as required by the PSLRA. In re Vantive Corp. Sec. Litig., 283 F.3d at 1085 n.3. However, Plaintiffs did not discuss their basis with respect to their beliefs that the individual defendants have committed fraud. As a result, Plaintiffs' allegations are insufficient because they lack the particularities that are required by PSLRA. See 15 U.S.C § 78u-4(b)(1).

---

[6] See PSLRA requirement in Section III.B.

## CONCLUSION

Based on the foregoing, Defendants Herbalife International, Inc. and Herbalife International of America, Inc.'s motion to dismiss is DENIED. Counts 1, 2, and 4 against Defendants Singleton and Bartholomew are DISMISSED. Although other Individual Defendants did not raise arguments similar to Singleton and Bartholomew, the Court dismisses Counts 1, 2, and 4 against all Individual Defendants for the same reasons as discussed above.

Dated this _12_ day of August, 2003.

_____
S. JAMES OTERO
UNITED STATES DISTRICT JUDGE