Priority ✓
Send ✓
Enter ✓
Closed ___
JS-5/JS-6 ___
JS-2/JS-3 ___
Scan Only ___

ORIGINAL

FILED
CLERK, U.S. DISTRICT COURT
OCT 27 2003
CENTRAL DISTRICT OF CALIFORNIA
BY              DEPUTY

ENTERED
CLERK, U.S DISTRICT COURT
OCT 29 2003
CENTRAL DISTRICT OF CALIFORNIA
BY              DEPUTY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Nancy Jacobs, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Herbalife International, Inc., et al., <br><br> Defendants. | NO. CV 02-1431 SJO (RCx) <br><br> **ORDER GRANTING DEFENDANTS POWELL AND JUNEJA'S MOTION TO DISMISS THE STATE CLAIMS AGAINST THEM/DECLINE SUPPLEMENTAL JURISDICTION OVER THE STATE CLAIMS** |

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

This matter is before this Court on Defendants Anthony Powell and Tarun Juneja's motion to dismiss the state claims against them/decline supplemental jurisdiction over the state claims.[1] Having considered the arguments raised in the briefs, the Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78. For the reasons set forth below, the Court hereby GRANTS the motion and DECLINES supplemental jurisdiction over all the state claims.

---

[1] Individual Defendants Leah Singleton, Steven and Debera Combs, John Beall, Doran Andry, and Brett Bartholomew and H.B. International Group Inc. – a non-individual – filed joinders to the instant motion. The balance of the Defendants, i.e., Herbalife International, Inc. and Herbalife International of America, Inc. (collectively, "Herbalife"), Dreambuilders International, Inc. ("Dreambuilders"), and Craig M. and Caroline Tsutakawa did not file a joinder or an opposition.

1    Plaintiffs originally filed this action on February 19, 2002. On May 2, 2003, Plaintiffs filed
2    their second amended complaint ("SAC"). Of the claims asserted, the Court has federal question
3    jurisdiction over Counts 1 through 5 of the SAC. **Count 1**, charged against **all Defendants**,
4    alleges that Defendants failed to register either the Herbalife or the Herbalife/NWTW Securities,
5    and are therefore liable for rescission and damages under Section 12(a)(1) (formerly Section
6    12(1)) of the Securities Act of 1993 (the "Securities Act"), 15 U.S.C. § 77l(a)(1). **Count 2**, charged
7    against **all Defendants**, alleges that Defendants sold the Herbalife/NWTW securities in a public
8    offering by means of a fraudulent "prospectus" (i.e., the NWTW promotional materials) in violation
9    of Section 12(a)(2) (formerly Section 12(2)) of the Securities Act, 15 U.S.C. § 77b(a)(2). **Count
10   3** alleges controlling person liability **solely against Herbalife** arising from the Section 12(a)(2)
11   violations by the NWTW Defendants, pursuant to Section 15 of the Securities Act, 15 U.S.C. §
12   77o. **Count 4** alleges that **all of the Defendants** engaged in a scheme to defraud in the sale of
13   both the Herbalife and the Herbalife/NWTW Securities, in violation of Section 10(b) of the
14   Securities and Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78b, and Rule 10b-5
15   promulgated thereunder by the SEC. **Count 5** alleges controlling person liability **solely against
16   Herbalife** arising from the Section 10(b) and Rule 10b-5 violations of the NWTW Defendants in
17   the sale of the Herbalife/NWTW securities.
18   The balance of the claims against **all Defendants** arises under state law: Fraud and
19   Deceit (Count 6); violation of Cal. Penal Code § 327 (Count 7); violation of California Seller
20   Assisted Marketing Plans Laws (Count 8); and unlawful, unfair or deceptive business practices
21   in violation of Cal. Bus. & Prof. Code § 17200 et seq. (Count 9).
22   In this Court's Order regarding Defendants' motion to dismiss the SAC, dated
23   August 12, 2003, the Court dismissed Counts 1, 2, and 4 of SAC as to **all individual Defendants**.
24   Certain Defendants, see supra note 1, now move for this Court to decline supplemental
25   jurisdiction over Plaintiff's state law claims against these Defendants, and dismiss the SAC as to
26   these Defendants.
27   / / /
28   / / /

## DISCUSSION

Federal court jurisdiction over the state claims depends upon whether this Court should exercise its discretion to retain supplemental claims. A district court may decline supplemental jurisdiction at any stage of the litigation, and the fact that the court previously decided to exercise jurisdiction does not prevent it from later changing its mind and relinquishing jurisdiction. See Innovative Home Health Care, Inc. v. P.T.-O.T. Ass'ns of Black Hills, 141 F.3d 1284, 1287 (8th Cir. 1994) (granting motion to set aside the judgment and dismissing action involving novel issues of state law after rendering judgment on state law claims).

The Supreme Court has defined the parameters of a federal court's supplemental jurisdiction in United Mine Workers v. Gibbs, 383 U.S. 715 (1966). Under Gibbs, a federal court may exercise supplemental jurisdiction over state law claims only if the state and federal claims derive from a common nucleus of operative facts and are the types of claims that the Court would ordinarily be expected to try together in one proceeding.

The Gibbs concepts were modified and to some extent restricted by the 1990 enactment of 28 U.S.C. § 1367. For the extent of the modification, see Executive Software v. U.S. District Court, 24 F.3d 1545 (9th Cir. 1994), which holds in general that dismissal or remand may take place where the case meets the general Gibbs tests (see also § 1367(a)) only under the circumstances set forth in § 1367(c). That subsection lists four situations where the Court may decline jurisdiction: (1) the state law claims raise a novel or complex question of state law; (2) the state law claims substantially predominate over the federal law claims; (3) the federal claims have been dismissed; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c).

Movants rely principally upon the dismissal of the federal claims against them in arguing that the Court should decline supplemental jurisdiction. However, dismissal of federal claims against the individual Defendants, in itself, is insufficient ground for dismissing the state claims against said Defendants because supplemental jurisdiction extends to any claim involving parties over which the court does not have independent federal jurisdiction so long as those claims are

1  part of the same case or controversy over which the court has jurisdiction. See 28 U.S.C. §
2  1367(a). Section 1367(a) provides:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. <u>Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties</u>.

(Emphasis added). Additionally, § 1367(c) clearly provides that a court could decline to exercise supplement jurisdiction based on § 1367(c)(3) only if the court has "dismissed <u>all</u> claims over which it has original jurisdiction." This is not the case here. The August 2003 Order merely dismissed the federal claims as to all individual Defendants; however, the Order clearly did not dismiss all of the federal securities claims which serve as the bases for this Court's supplemental jurisdiction over the state claims. In the final analysis, the individual Defendants misconstrued § 1367.

Nevertheless, having reviewed all the documents on file, the Court concludes that the state law claims "substantially predominate" over the federal law claims. See 28 U.S.C. § 1367(c)(2). Although there are five federal claims and only four state claims, the number of the claims is not conclusive as to whether the state claims "substantially predominate." See e.g. Borough of West Mifflin v. Lancaster, 45 F.3d 780, 790 (3d Cir. 1995) (holding that state law claims for malicious prosecution, abuse of process, and conspiracy did not "substantially predominate" simply because they are greater in number compared to the federal civil rights claim).[2]

Section 1367(a)'s grant of "supplemental" jurisdiction was intended to broaden the preexisting scope of what had previously been termed "pendent" jurisdiction to include claims involving the addition of parties. H.R. Rep. No. 416, 101st Cong., 2d Sess. 29 (1990), reprinted

---

[2] The Third Circuit noted that:
> The "substantially predominate" standard, however, is not satisfied simply by a numerical count of the state and federal claims the plaintiff has chosen to assert on the basis of the same set of facts. An analysis more sensitive to the relevant interests is required.

Borough of West Mifflin, 45 F.3d at 789.

in 1990 U.S.C.C.A.N. 6802, 6875. Section 1367(c), on the other hand, was intended simply to codify the preexisting pendent jurisdiction law, enunciated in <u>Gibbs</u> and its progeny, concerning those instances in which a district court is authorized to decline to hear a state claim it would have the power to hear because of its relationship to an original federal jurisdiction claim. H.R. Rep. No. 416, 1990 U.S.C.C.A.N. at 6875 (Subsection 1367(c) "codifies the factors that the Supreme Court has recognized as providing legitimate bases upon which a district court may decline jurisdiction over a supplemental claim, even though it is empowered to hear the claim."). It is important to note that the "substantially predominates" standard found in § 1367(c)(2) comes directly from the Supreme Court's opinion in <u>Gibbs</u> and should be understood in that context. <u>Borough of West Mifflin</u>, 45 F.3d at 788. The Court in <u>Gibbs</u> explained the doctrine of pendent jurisdiction as follows:

> It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them, <u>Erie R. Co. v. Tompkins</u>, 304 U.S. 64, 82 L. Ed. 1188, 58 S. Ct. 817. <u>Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties by procuring for them a surer-footed reading of applicable law</u> .... [I]f it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.

<u>Gibbs</u>, 383 U.S. at 726-27 (footnotes omitted) (emphasis added). The meaning of the phrase "substantially predominates" is explained by an appellate court as follows:

> [T]he "substantially predominates" standard of § 1367(c)(2) comes from <u>Gibbs</u>. It is important to recognize that this standard was fashioned as a limited exception to the operation of the doctrine of pendent jurisdiction -- a doctrine that seeks to promote judicial economy, convenience, and fairness to litigants by litigating in one case all claims that arise out of the same nucleus of operative fact. When a district court exercises its discretion not to hear state claims under § 1367(c)(2), the advantages of a single suit are lost. For that reason, § 1367(c)(2)'s authority should be invoked only where there is an important countervailing interest to be served by relegating state claims to the state court. <u>This will normally be the case only where "a state claim constitutes the real body of a case, to which the federal claim is only an appendage,"</u> <u>Gibbs</u>, 383 U.S. at 727 -- only where permitting litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog.

<u>Borough of West Mifflin</u>, 45 F.3d at 789 (emphasis added).

Here, the state claims, particularly, Count 6 (Fraud and Deceit) and Count 7 (Endless Chain Scheme) constitute "the real body" of this action. Plaintiffs would not even have added the five securities claims in the SAC but for Defendants' contention in their motion to dismiss the first amended complaint that Plaintiffs' RICO claim, the only federal claim in the original complaint and the first amended complaint, was preempted by federal securities laws. The original complaint and the first amended complaint had one federal claim based on RICO, and five state claims. Based on the progression of this case, it is not at all unreasonable to conclude that the state claims constitute the real body of this case, to which the five federal claims are only appendages. For all the foregoing reasons, the Court declines to exercise jurisdiction over all the state claims as to **all the Defendants,** including Herbalife, Dreambuilders, and H.B. International.

Although the Court is not unmindful that dismissal of state claims may only force the Plaintiffs to re-file state law claims in state court, while federal securities claims would remain in this Court against corporate Defendants, i.e., Herbalife, H.B. International,[3] and Dreambuilders, thereby multiplying the costs of this litigation for the parties and the court system, such concern is outweighed by the fact that the federal court is a court of limited jurisdiction and the state courts could provide a "surer-footed reading of applicable state laws." Gibbs, 383 U.S. at 726-27.[4]

To sum, the Court declines to exercise jurisdiction over all the state claims as to **all the Defendants,** including Herbalife, Dreambuilders, and H.B. International.

IT IS SO ORDERED.

Dated this 27th day of October 2003.

S. JAMES OTERO
UNITED STATES DISTRICT JUDGE

---

[3] The August 12, 2003 Order was clear that Counts 1, 2, and 4 were not dismissed as against H.B. International Group. In that Order, the dismissal of these claims only applied to the individual Defendants.

[4] Herbalife and Dreambuilders did not file an opposition to Co-Defendants' motion.